## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| ALEX SCESNY,                             )  | |
|                                          )  | |
|        Petitioner,        )  | |
|                                          )  | |
|        v.                 )  | Civil Action No. |
|                                          )  | 16-40024-FDS |
| KELLY RYAN,                              )  | |
|                                          )  | |
|        Respondent.        )  | |

_____

### MEMORANDUM AND ORDER
### ON PETITIONER'S MOTION TO STAY

**SAYLOR, J.**

This is an action by a state prisoner, currently serving his sentence at MCI-Shirley,
seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner Alex Scesny was
convicted after a jury trial in Worcester County Superior Court on one count of first-degree
murder, Mass. Gen. Laws ch. 265, § 1, and one count of aggravated rape, Mass. Gen. Laws ch.
265, § 22(a).  He was sentenced to two consecutive terms of life imprisonment without parole.
On appeal, the Massachusetts Supreme Judicial Court affirmed the first-degree murder
conviction and reversed the aggravated rape conviction.

Scesny has filed a petition for habeas relief based on seven different grounds.  In
conjunction with his habeas petition, he has filed a motion to stay the petition and hold it in
abeyance while he pursues alternative remedies in state court.  The alternative remedies he seeks
to pursue include a motion for new trial based on ineffective assistance of trial counsel, a motion
to retest forensic evidence, and a motion for discovery of evidence from the crime scene and

other items.  Respondent Kelly Ryan, superintendent of MCI-Shirley, opposes the motion

because petitioner has not shown good cause for his failure to exhaust all of his state remedies.

     For the following reasons, petitioner's motion to stay will be denied.

## I.    Background

### A.    Factual History[1]

     In October 1996, police responded to a report that a woman's body had been found near

the side of a road in Fitchburg, Massachusetts.  *Commonwealth v. Scesny*, 472 Mass. 185, 186

(2015).  Investigators discovered the body of Theresa Stone, lying on her side with her pants and

underwear pulled down around her knees.  *Id.*  After an autopsy, the cause of death was recorded

as strangulation by ligature.  *Id.* at 188.  There were multiple injuries to her face and body.  *Id.*

When examining the body, investigators used swabs to collect several DNA samples from the

victim's body and clothing.  *Id.*  DNA from semen recovered from a rectal swab matched

petitioner's DNA.  *Id.*[2]  Additional swabs taken from the victim's body and clothes also matched

the petitioner, but one belonged to another unidentified individual.  *Id.*

     In 2008, twelve years later, petitioner was indicted for murder and aggravated rape.  *Id.* at

191.  At trial, the prosecution presented evidence that suggested the victim died during, or

shortly after, intercourse.  *Id.* at 192.  Petitioner conceded that he had had intercourse with the

victim, but maintained that it was consensual and unrelated to the murder.  *Id.* at 190.  However,

Debra McKillop, a criminalist employed by the State Police crime laboratory, gave expert

testimony that after seminal fluid is deposited in an orifice and a piece of cloth is placed over that

---

[1] For a more detailed version of the facts, see *Commonwealth v. Scesny*, 472 Mass. 185 (2015).

[2] "The probability of a randomly selected, unrelated individual having a DNA profile matching the major profile obtained from the rectal swab was one in 13.2 quadrillion of the Caucasian population."  *Scesny*, 472 Mass. at 188.

orifice, the fluid often drains and is transferred onto, or absorbed by, the cloth.  *Id.* 189, n.10.

Therefore, because investigators found seminal fluid inside the victim's rectum, but did not find

seminal fluid on her underwear, that evidence suggested that the victim did not pull her pants and

underwear back up after the semen was deposited in her rectum.  *Id.* at 189.  That evidence

indicated that the petitioner had intercourse with victim just before her death, and that he was

likely the person who strangled her.  *Id.* at 192.  Based on those facts, and other circumstantial

evidence, the jury convicted petitioner of first-degree murder and aggravated rape on March 30,

2012.  *Id.* at 191.

Petitioner appealed his conviction to the Supreme Judicial Court.  *Id.* [3]  He raised six

grounds on appeal:  (1) that the evidence presented at trial was insufficient to identify him as the

perpetrator of either the homicide or aggravated rape; (2) that the trial court committed

prejudicial error when it admitted scientific testimony by a witness not qualified to give expert

testimony; (3) that the testimony from a substitute medical examiner prevented him from

exercising his constitutional right to confront witnesses; (4) that testimony that he had patronized

the bar where the victim was last seen, and the admission of a photograph suggesting petitioner

had a criminal background, created a substantial likelihood of a miscarriage of justice; (5) that

the Commonwealth's closing argument disparaged his right to present a defense and contained

improperly prejudicial statements; and (6) that the trial court's failure to instruct the jury on

third-party culprit evidence constituted reversible error.  *Id.* at 186-87.

On July 14, 2015, the SJC affirmed the first-degree murder conviction, but reversed the

aggravated rape conviction.  *Id.* at 207; Pet. 2.  The court agreed with petitioner that the

Commonwealth had not met its burden in showing that the intercourse between petitioner and the

_____

[3] The SJC directly reviews convictions for first-degree murder.  Mass Gen. Laws. ch. 278, § 33E.

victim was not consensual.  *Scesny*, 472 Mass. at 193-94.  As to Grounds Three and Five, the

SJC also found that the testimony from the substitute medical examiner was inadmissible

hearsay and that the prosecution's closing argument was inappropriate in part.  *Id.* 196-98; 200-

06.  However, the SJC held that a jury could reasonably infer that petitioner murdered the victim

after intercourse, because petitioner admitted to having intercourse with the victim and, based on

the forensic evidence, the victim likely died during, or shortly after, intercourse with him.  *Id.* at

192-93.  Given the weight of all the evidence, the SJC held that the errors at trial did not warrant

reversal.  *Id.* at 205-06.[4]

### B.    Procedural History

Petitioner was indicted for first-degree murder and aggravated rape in 2008.  *Id.* at 191.

In March 2012, a jury convicted him on both counts in the indictment.  (Pet. 2).  On July 14,

2015, the SJC affirmed the first-degree murder conviction and reversed the aggravated rape

conviction.  (*Id.*).

Petitioner filed the present habeas petition on March 1, 2016.  (Dkt. No. 1).  Along with

the petition, he filed a motion to stay the case and hold it in abeyance until he has exhausted all

of his remedies in state court.  (Dkt. No. 3).  Respondent filed an opposition on June 16, 2016,

contending that petitioner has not shown good cause for the failure to exhaust and the motion to

stay should be denied.  (Resp't Opp. Mem. 1).

## II.    Analysis

### A.    Legal Standard

Before applying for a writ of habeas corpus, a petitioner must exhaust his available

remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  Specifically, the petitioner must

---

[4]The SJC found that the trial court did not err with respect to Grounds Two, Four, and Six.

demonstrate that he has "exhausted his state remedies by having first presented the federal constitutional issue to the state courts for their decision." *Goodrich v. Hall*, 448 F.3d 45, 47 (1st Cir. 2006). Where a claim raised in a petition for a writ of habeas corpus is unexhausted, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (citing *Darr v. Burford*, 339 U.S. 200, 204 (1950)). For a claim to be exhausted, the claim must have been fairly presented to the state court. *Baldwin v. Reese*, 541 U.S. 23, 32 (2004).

When a petitioner raises unexhausted claims, he may request that the federal court stay the habeas petition and hold it in abeyance until petitioner has had time to exhaust his unexhausted claims at the state level. *Rhines v. Weber*, 544 U.S. 269, 276 (2005). However, the Court's discretion is circumscribed, as its decision must "be compatible with AEDPA's purposes." *Id.*[5] Accordingly, "stay and abeyance should be available only in limited circumstances." *Id.* at 278. The circumstances in which a stay and abeyance is appropriate are

> where: (1) "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," (2) the "unexhausted claims are potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." In cases where these criteria are not satisfied, the Supreme Court held that "the [district] court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief."

*Clements v. Maloney*, 485 F.3d 158, 169 (1st Cir. 2007) (citations omitted) (quoting *Rhines*, 544 U.S. at 277-78).

---

[5] AEDPA is the Anti-Terrorism and Effective Death Penalty Act of 1996, codified in relevant part at 28 U.S.C. § 2254.

### B.       Exhaustion of Available State Remedies

Petitioner contends that his conviction is unlawful based on seven grounds:  (1) that the

evidence presented at trial was insufficient to support a conviction; (2) that the trial court

admitted prejudicial expert testimony from a non-expert witness; (3) that the testimony from a

substitute medical examiner was inadmissible hearsay and prejudiced the trial's outcome; (4) that

testimony that petitioner had patronized the bar where the victim was last seen, and the

admission of a photograph suggesting petitioner had a criminal background, created a substantial

likelihood of a miscarriage of justice; (5) that the Commonwealth's closing argument disparaged

petitioner's right to present a defense and misstated the law; (6) that the trial court's failure to

instruct the jury on third-party culprit evidence constitutes reversible error; and (7) that the lack

of evidence and presence of trial errors show that there was insufficient evidence to support the

conviction.

Those grounds were all presented to the Massachusetts Supreme Judicial Court on direct

appeal.[6]  Thus, the current petition does not contain any unexhausted claims.  However, after

filing his original petition, petitioner then filed a motion to stay the habeas petition to allow him

to pursue alternative remedies, not pleaded in his petition, at the state level.  After pursuing the

state remedies, the petitioner would then amend the original petition to include the newly

exhausted claims.  Such a request essentially amounts to a "mixed petition," one that contains

both exhausted and unexhausted claims.  Therefore, because the petition is mixed, the petitioner

must show (1) good cause for the failure to exhaust all available state remedies, (2) that the

claims are not frivolous, and (3) that he did not engage in dilatory tactics.

---

[6] Although the SJC considered only six claims, petitioner's seventh claim is essentially the same as his first.
Therefore, Claim Seven is exhausted.

6

### C.    <u>Good Cause for Failure to Exhaust</u>

Petitioner contends that the ineffective assistance of his appellate counsel constitutes good cause for his failure to exhaust his state remedies.  Generally, a petitioner's failure to exhaust claims based on a claim of ineffective assistance does not constitute good cause. *Clements*, 485 F.3d 169-70; *see also Gaouette v. O'Brien*, 2010 WL 5376849, at *1 (D. Mass. Dec. 20, 2010) (holding that appellate counsel's failure to include certain claims in an application for leave to obtain further appellate review did not constitute good cause).

Petitioner here nonetheless asserts that his ineffective assistance claim constitutes good cause because of the "procedural default exception."  As a general rule, federal courts are barred from hearing issues raised in habeas petitions that a state court declined to hear based on petitioner's failure to comply with a state procedural requirement.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  However, the Supreme Court has carved out a narrow exception where claims of ineffective assistance of counsel that are procedurally defaulted can be heard by federal courts when the procedural default occurred because of the ineffective assistance of appellate counsel.  *Martinez v. Ryan*, 132 S. Ct. 1309, 1316-20 (2012).  Petitioner contends that his claims fall within this exception, because his appellate counsel provided ineffective assistance by failing to file a motion for new trial based on the ineffective assistance of trial counsel.

The exception in *Martinez* does not apply to petitioner's claim.  He has not been barred from filing his unexhausted claims in state court due to a procedural default.  Indeed, he has not even filed motions raising those claims in state court.  The immediate issue before the court is whether he has demonstrated good cause for failing to exhaust certain claims, and he has not made that showing.  If his claims, once filed in state court, are found to be barred because of a procedural default, he may then potentially argue that a federal court can hear those claims in a

habeas petition based on the ineffective assistance of appellate counsel; until then, however, that argument is premature at best.

Accordingly, because petitioner has not shown good cause, the Court need not address the merits of the claims or evaluate whether he engaged in dilatory tactics, and the motion to stay will be denied.

### D.   When a Motion to Stay is Denied

When a petition contains mixed claims and a motion to stay is denied, "the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Rhines*, 544 U.S. at 278.  Here, the petition does not contain any unexhausted claims, but petitioner has indicated that he plans on pursuing other remedies in state court.  Because he has available state remedies, he may request that the petition be dismissed without prejudice to permit him to return to state court and pursue the unexhausted claims, or he may proceed with the current petition.  *See Rose v. Lundy,* 455 U.S. 509, 520 (1982); *see also Neverson v. Farquharson*, 366 F.3d 32, 42 (1st Cir. 2004).[7]  The Court will therefore allow petitioner 28 days to dismiss the petition voluntarily without prejudice.

---

[7] Petitioner should be aware that the filing of his federal habeas petition did not toll any applicable limitations periods under Massachusetts law, and, therefore, he may now be barred from raising the unexhausted claims in state court because the appeals deadlines may have passed.

Petitioner should also be aware that the filing of his federal habeas petition did not toll the running of the one-year statute of limitations contained in 28 U.S.C. § 2244(d).  *See Neverson v. Farquharson,* 366 F.3d 32, 38 (1st Cir. 2004).  Accordingly, any successive petition that he attempts to file in this Court (for example, after attempting to exhaust his state remedies) may be barred as untimely.

Finally, petitioner should be aware that if he decides to proceed without first exhausting his other claims, he may be prevented from filing a second petition requesting habeas review of those previously unexhausted claims.  *See* 28 U.S.C. § 2244(3)(A) (requiring petitioner to get authorization from the appropriate court of appeals before filing a second or successive petition); *but see Slack v. McDaniel*, 529 U.S. 473 (2000) (holding that a petitioner is not barred from bringing a second petition after the first petition was dismissed for failure to exhaust).

**III.**     <u>**Conclusion**</u>

For the reasons stated above, petitioner's motion to stay the case is DENIED.  Petitioner may dismiss the petition voluntarily without prejudice 28 days from the date of this order.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV

Dated:  August 4, 2016                    United States District Judge