# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEX SCESNY, ) | |
| ) | |
| Petitioner, ) | Civil Action No. |
| ) | 16-40024-FDS |
| v. ) | |
| ) | |
| KELLY RYAN, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

SAYLOR, J.

This is a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). In October 1996, the body of Theresa Stone was discovered by the side of a road in Fitchburg, Massachusetts. Sixteen years later, on March 29, 2012, petitioner Alex Scesny was convicted of murder and aggravated rape in Massachusetts state court. He was sentenced to two concurrent terms of life imprisonment without the possibility of parole. On July 14, 2015, the Massachusetts Supreme Judicial Court ("SJC") affirmed the murder conviction, although it reversed the rape conviction on the ground that the evidence was insufficient to sustain the verdict.

Petitioner asserts seven grounds for habeas relief: (1) constitutional insufficiency of evidence; (2) improper admission of expert testimony by an unqualified witness; (3) improper admission of hearsay evidence in violation of the Sixth Amendment; (4) improper admission of photograph and eyewitness testimony occurring twelve years after the crime; (5) improper closing arguments by the prosecutor that damaged his ability to present a defense, misstated the

law, and violated his constitutional rights; (6) improper refusal to give his proposed jury instruction on third-party culprit evidence; and (7) the totality of the errors resulted in insufficient evidence to support his conviction. Respondent's subsequent filings, and this Court's preliminary rulings, have treated grounds (1) and (7) as the same issue, and they will continue to be treated as such here.

For the reasons set forth below, the petition will be denied.

**I.  Background**

   **A.  Factual Background**

The facts of the crimes for which petitioner was convicted are set out in detail in the decision by the SJC. *See Commonwealth v. Scesny*, 472 Mass. 185 (2015). Briefly, they are as follows:

The victim's daughter saw her leave home to buy groceries on the evening of October 23, 1996. *Id.* at 187. She stopped off at a bar for some drinks and talked for about an hour with the bartender before leaving alone. *Id.* When she returned to her apartment with groceries, she told her daughter that she had received a ride from a man in a black truck and that she did not want to go with him, but he was waiting for her. *Id.* Between 9:30 and 10:30 p.m. she left her apartment. She was never seen by her daughter again. *Id.* On October 25, 1996, her body was discovered on the side of the road in Fitchburg. A post-mortem examination revealed, among other things, that she had been strangled and that she had had anal intercourse around the time of death. *Id.* at 187-88.

The crime remained unsolved for twelve years. In 2008, the petitioner's DNA profile was entered into a database and found to match swabs taken from the victim's body. *Id.* at 188. Petitioner was indicted, and the case was brought to trial in March 2012.

At the trial, the prosecution presented evidence that suggested the victim died during, or

shortly after, intercourse. *Id.* at 192. Petitioner conceded that he had had intercourse with the victim, but maintained that it was consensual and unrelated to the murder. *Id.* at 190.

Debra McKillop, a criminalist employed by the State Police crime laboratory, testified that after seminal fluid is deposited in an orifice and a piece of cloth is placed over that orifice, the fluid often drains and is transferred onto, or absorbed by, the cloth. *Id.* at 189 n.10. Because investigators found seminal fluid inside the victim's rectum, but did not find any on her underwear, that evidence suggested that the victim did not pull her pants and underwear back up after the semen was deposited in her rectum. *Id.* at 189. That evidence indicated that the petitioner had intercourse with victim just before her death, and that he was likely the person who strangled her. *Id.* at 192.

The jury convicted petitioner of first-degree murder and aggravated rape on March 29, 2012. *Id.* at 191.

### B. <u>Procedural History</u>

Petitioner was sentenced to two terms of life imprisonment without the possibility of parole, for aggravated rape and first-degree murder, to be served concurrently. He filed a timely appeal with SJC. *See* Mass. Gen. Laws ch. 278, § 33E. On July 14, 2015, the SJC affirmed the murder conviction but reversed the rape conviction on the grounds of insufficiency of the evidence. *Scesny*, 472 Mass. at 207.

Petitioner then timely filed this petition for a writ of habeas corpus on March 1, 2016. He simultaneously filed a motion asking the Court to stay the petition pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982), so that he could return to state court and exhaust certain unexhausted claims. The Court denied that petition on August 4, 2016, on the ground that petitioner had not shown good cause for his failure to exhaust his state claims.

On November 17, 2017, petitioner filed a second motion to stay, this time alleging

3

"recently recognized" *Brady* violations and the contemplation of further post-conviction proceedings with the state court. On December 19, 2017, the Court denied the second motion to stay, again finding a failure to show good cause why the claims had not been exhausted, and further finding that petitioner had failed to make a showing that (1) his new claim was meritorious and (2) that the statute of limitations established by 28 U.S.C. § 2244(d)(1) would allow amendment of the petition.

## II. Standard of Review

### A. Exhaustion and Procedural Default

Before the Court can evaluate the likelihood of success on the merits of a constitutional claim, it must evaluate whether the claim was fairly presented to and exhausted in the state courts. 28 U.S.C. § 2254(b)(1)(A). "This exhaustion requirement, which codified preexisting law, is born of the principle 'that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act.'" *Coningford v. Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011) (quoting *Rose v. Lundy,* 455 U.S. at 515). The petitioner bears a "heavy burden" to show that he "fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim." *Id.* (alteration in original) (quoting *Adelson v. DiPaola*, 131 F.3d 259 (1st Cir. 1997)).

In addition, "federal habeas review is precluded, as a general proposition, when a state court has reached its decision on the basis of an adequate and independent state-law ground." *Burks v. DuBois*, 55 F.3d 712, 716 (1st Cir. 1995) (citing *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)); *see also Lambrix v. Singletary*, 520 U.S. 518, 522-23 (1997). This rule extends to situations in which "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman,* 501 U.S. at 729-30. A state procedural rule is "adequate" if it is regularly or consistently applied by the state courts.

4

*Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quoting *Hathorn v. Lovorn,* 457 U.S. 255, 262-263 (1982)). The rule is "independent" if it does not depend on a federal constitutional ruling. *Foster v. Chatman*, 136 S. Ct. 1737, 1746 (2016) (citing *Ake v. Oklahoma,* 470 U.S. 68, 75 (1985)). The doctrine may apply even where the state procedural default is offered as an "alternative" basis for a decision. *See Coleman*, 501 U.S. at 733.

      **B.**     **<u>Review of Claim Adjudicated on Merits</u>**

An application for a writ of habeas corpus brought by a state prisoner "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the "unreasonable application" prong of the statute, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dolinger v. Hall*, 302 F.3d 5, 9 (1st Cir. 2002) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). The "unreasonable application" determination "must be decided primarily on the basis of Supreme Court holdings that were clearly established at the time of the court proceedings." *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002) (citing *Williams*, 529 U.S. at 412). "Nevertheless, factually similar cases from the lower federal courts may inform such a determination, providing a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns." *Id.* Furthermore,

5

> if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application . . . . [S]ome increment of incorrectness beyond error is required. The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court.

*McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (internal citations and quotation marks omitted).

### III. Analysis

#### A. Grounds 1 and 7: Sufficiency of the Evidence

Grounds 1 and 7 allege a constitutional insufficiency of the evidence, resulting in a violation of petitioner's Sixth and Fourteenth Amendment rights. *See Jackson v. Virginia*, 443 U.S. 307 (1979). In support of that contention, petitioner points to the SJC's acknowledgement that the Commonwealth's case was based upon entirely circumstantial evidence. *Scesny*, 472 Mass. at 193. He essentially contends that the circumstantial nature of each aspect of the evidence resulted in an impermissible stacking of inferences that left open significant reasonable doubt.

In determining whether the evidence is sufficient to uphold a conviction, the relevant constitutional question is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. In the present case, the SJC applied the test of *Commonwealth v. Latimore*, 378 Mass. 671 (1979), which is functionally equivalent to the test established by the Supreme Court in *Jackson*. *See Latimore*, 378 Mass. at 678. Reviewing the trial evidence—which included eyewitness testimony, forensic blood-spatter evidence, and the defendant's concession that he had had intercourse with the victim—the SJC determined that "[b]ased on this evidence, the jury reasonably could infer that the defendant had sex with the victim and then strangled her." *Scesny*, 472 Mass. at 192. When a state court has reviewed a

challenge to the sufficiency of the evidence under the appropriate constitutional standard, a federal court may overturn that decision "only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 4 (2011); *see Leftwich v. Maloney*, 532 F.3d 20, 23 (1st Cir. 2008) (holding that the "state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error").

Petitioner argues that the conclusions that the Commonwealth drew and asked the jury to draw were unreasonable because other conclusions could have been drawn from the same evidence. But nowhere does he present conflicting evidence or make a credible argument that the Commonwealth's contentions were unreasonable. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Hurtado v. Tucker*, 245 F.3d 7, 19 (1st Cir. 2001). It is not the role of this Court on habeas review to overrule the jury's decision simply because a different jury might have reached a different conclusion. *See Cavazos*, 565 U.S. at 4 (reversing the admittedly rational conclusions of the Court of Appeals, which had itself reversed the jury, because although "rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold"). Accordingly, the SJC did not unreasonably determine that a reasonable juror could have found beyond a reasonable doubt that the defendant killed the victim.

As to petitioner's contention that the Commonwealth asked the jury to impermissibly stack inferences, "[g]uilt beyond a reasonable doubt cannot be premised on pure conjecture. But a conjecture consistent with the evidence becomes less and less a conjecture, and moves gradually toward proof, as alternative innocent explanations are discarded or made less likely."

7

*Stewart v. Coalter*, 48 F.3d 610, 615-16 (1st Cir. 1995). Where, as here, the Commonwealth's case was premised largely on circumstantial evidence and inferences, it is the task of the Court, on habeas review, to adduce whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Newman v. Metrish*, 543 F.3d 793, 797 (6th Cir. 2008). The inquiry becomes even more deferential where, as here, the state supreme court has determined that the evidence was sufficient to support the conviction. *See Cavazos*, 565 U.S. at 7, 9. Again, the role of this Court is not to make its own determination of guilt, but rather to determine whether the SJC reasonably determined that the evidence was sufficient.

Petitioner cites *O'Laughlin v. O'Brien*, 568 F.3d 287 (1st Cir. 2009), which concluded that circumstantial evidence sometimes "amounts to only a reasonable speculation and not to sufficient evidence." *Id.* at 302 (quoting *Newman*, 543 F.3d at 796). *O'Laughlin*, however, is readily distinguishable, because it involved a complete lack of physical evidence linking the victim to the accused or the scene of the crime. *O'Laughlin*, 568 F.3d at 304 ("It bears repeating that the prosecution had to rely on circumstantial evidence because no physical or DNA evidence linked O'Laughlin to the attack despite the copious amounts of blood at the crime scene. Considering the large amount of blood, it is difficult to fathom how O'Laughlin was able to avoid having any blood or other DNA evidence connect him to Mrs. Kotowski."); *see also Newman*, 453 F.3d at 797 ("[E]ven assuming that Newman's gun was indeed the one used in the homicide, there was no evidence of what happened to it between that date and the date of the homicide, and we need not speculate as to what might have happened.").

Here, the evidence linking petitioner to the victim includes his own concession that he had intercourse with the victim. Where the evidence places a defendant at the scene of the crime in close temporal proximity to its perpetration, the inference of his guilt gains substantial weight.

8

*Accord Newman*, 543 F.3d at 797 n.4 ("For example, if the witness had observed the gun in Newman's house only a day before the homicide and had been more certain that it was indeed the same gun as that used in the homicide, there would be a stronger inference that Newman was present. With these hypothetical facts, Newman's petition would more closely resemble those made in cases where circumstantial evidence did satisfy the *Jackson* standard.").

It is possible to "imagine innocent explanations for almost anything," but a reasonable jury can reject them as "far-fetched." *Stewart*, 48 F.3d at 615. And it is well-established that "the evidence need not exclude every reasonable hypothesis except that of guilt." *Newman*, 543 F.3d at 797. The SJC determined that a rational juror could have made the necessary credibility determinations and reasonable inferences to eliminate any reasonable doubt as to petitioner's guilt. This Court does not find that determination to be unreasonable, and will not substitute its judgment for the determination of the jury.

Accordingly, this Court finds that the decision of the SJC was not an unreasonable application of *Jackson*, and petitioner will therefore not be granted habeas corpus relief on that basis.

### B. Grounds 2 and 4: Admission of Allegedly Improper Evidence

Grounds 2 and 4 allege that the trial judge erred (1) in allowing the testimony of an unqualified expert, (2) in admitting eyewitness testimony as to events that occurred twelve years earlier, and (3) admitting prejudicial photographic evidence. Both claims fail, however, because they were not exhausted in state court.

A federal court may not consider a petition for a writ of habeas corpus filed by a person in state custody unless the petitioner has exhausted his state court remedies with respect to all claims raised in his application. *See* 28 USC § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."); *see also Rose v. Lundy*, 455 U.S. at 518.

In order to satisfy the exhaustion requirement, a petitioner must present both the factual and legal bases of his federal claim "fairly and recognizably" to the state courts. *Adelson v. DiPaola*, 131 F.3d 259, 262 (1st Cir. 1997) (citing *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)). "To carry this burden, the petitioner must demonstrate that he tendered each claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" *Adelson*, 131 F.3d at 262 (quoting *Scarpa v. Dubois*, 38 F.3d 1, 6 (1st Cir. 1994)).

Petitioner contends that the admission of the disputed evidence amounted to violations of constitutional due process. However, he did not make any mention of potential federal violations in his appeal to the SJC, nor did he cite federal case law or statutes. He did not even ground his claims in language that might call attention to a constitutional concern, and so never "alerted" the SJC "to the existence of a federal question," as required by *Adelson*. His failure to do so bars review in this Court. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim in order to find material . . . that does so").

As to the disputed expert testimony, petitioner's brief to the SJC grounded his argument in state case law defining expert qualifications and arguments as to how the particular expert in his case did not meet those qualifications. S.A. 82-88.[1] As to the eyewitness testimony and photographic evidence, he only contended on state-law grounds that the former was too far in the

---

[1] Citations to "S.A. __" refer to the supplemental answer filed with this Court.

past to be reliable and the latter "conveyed a criminal history to the jury." S.A. 92-94. He rested both of those issues wholly on state case law, with no reference to a federal statutory or constitutional question. Indeed, he did not even make a passing reference to due process, as he did in his petition to this Court. *See Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir. 1987*)* (holding that an "oblique" invocation of the phrase "due process" without analysis is not sufficient to satisfy the exhaustion requirement); *see also Adelson* 131 F.3d at 263 ("[T]he mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim.").

The Court accordingly finds that petitioner has failed to exhaust his state court remedies as to Grounds 2 and 4 of his habeas petition, and they will therefore be dismissed.

### C. Ground 3: Procedural Default

Ground 3 alleges that the admission of an autopsy report, and the use of a substitute medical examiner to testify concerning its contents, violated his Sixth Amendment confrontation right. The SJC determined on adequate and independent state grounds that this claim had been procedurally defaulted by counsel's failure to object to it at trial, and therefore the court only reviewed the claim under a "substantial likelihood of a miscarriage of justice" standard, finding no such likelihood. *Scesny*, 472 Mass. at 197-98.

"To be considered an 'adequate' ground to bar habeas review, the state procedural rule that is the basis for a procedural default ruling must be regularly and consistently enforced by the state courts." *Pina v. Maloney*, 565 F.3d 48, 53 (1st Cir. 2009). "Ordinarily, violations of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim." *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)).

It is well established that federal habeas review is not available "when a state court

11

declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Massachusetts has a "long-standing rule that issues not raised at trial . . . are treated as waived." *Commonwealth v. Curtis*, 417 Mass. 619, 626 (1994). A state-court decision based on a petitioner's failure to comply with a contemporaneous objection rule constitutes an adequate and independent state ground. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977).

Here, it is undisputed that petitioner's counsel did not object contemporaneously to the use of the substitute medical examiner or the admission of the autopsy report. The result was a procedural default according to a long-standing Massachusetts rule. The SJC's limited "miscarriage of justice" review does not operate as a waiver of the underlying procedural default, but rather constitutes the "classic example" of an independent and adequate state ground supporting application of the procedural default rule. *Burks v. Dubois*, 55 F.3d 712, 716 & n.2 (1st Cir. 1995); *see also Simpson v. Matesanz*, 175 F.3d 200, 206-07 (1st Cir. 1999). On review, the SJC acknowledged the inadmissibility of the evidence, but ultimately found no substantial likelihood of a miscarriage of justice for three reasons: first, because the petitioner used the testimony to build his own defense; second, because the testimony was cumulative of evidence legitimately admitted; and third, because the testimony did not relate to any issue that the petitioner contested. *Scesny*, 472 Mass. at 197-98.

In order to avoid that procedural bar, petitioner is required to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or else demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice." *Glacken v. Dickhaut*, 585 F.3d 547, 551 (1st Cir. 2009). Both "cause" and "prejudice" must be shown. *Francis v. Henderson*, 425 U.S. 536, 542 (1976). As to "cause," the defendant bears the

risk of attorney error that results in procedural default, and a showing of "cause" requires that petitioner demonstrate "some objective factor external to the defense [which] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). As to "prejudice," a habeas petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Petitioner does not address either the "cause" or "prejudice" requirements in any of his filings in this Court. Accordingly, habeas corpus relief on the basis of the improper admission of the medical examiner's report and the testimony of a substitute medical examiner will be denied as procedurally defaulted.

### D. Ground 5: Improper Closing Argument

Ground 5 alleges that the Commonwealth's closing argument at trial included remarks that violated his Sixth Amendment right to present a defense. He contends, among other things, that the prosecutor improperly disparaged his alternative theory of the crime (which involved third-party culprit evidence) and improperly vouched for the government's witnesses. The SJC agreed that the prosecutor's argument was improper, explaining that "[t]here is no question that the prosecutor's argument was flawed." *Scesny*, 485 Mass. at 200. And it acknowledged that the "opportunity to present third-party culprit evidence is of constitutional dimension . . . because it is rooted in the right of criminal defendants to a meaningful opportunity to present a complete defense." *Id.* at 202 (quoting *Commonwealth v. Scott*, 470 Mass. 320, 327 (2014)). In determining whether the prosecutor's errors required reversal, the SJC applied the four-factor test originating in *Commonwealth v. Kelly*, 417 Mass. 266 (1994), including (1) whether there was a timely objection, (2) whether the inaccuracy went to a collateral issue or went "to the heart

13

of the case," (3) what steps the judge took to mitigate the damage, and (4) whether it could make a difference in the jury's conclusions. *Id.* at 271. Although it found that the first three factors weighed in petitioner's favor, the SJC concluded that the fourth factor weighed so heavily against him that no new trial was warranted: it held that the strength of the Commonwealth's DNA evidence against the petitioner "eliminate[d] the possibility of prejudice" because it pointed only to the petitioner and not to either purported third party. *Scesny*, 472 Mass. at 205-06.

In *Darden v. Wainwright*, 477 U.S. 168 (1986), the Supreme Court held that "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). The First Circuit has held that the four-factor *Kelly* test applied by the SJC includes all of the factors that the Supreme Court addressed in *Darden* and is functionally equivalent to the First Circuit's own test for assessing similar claims. *Dagley v. Russo*, 540 F.3d 8, 19 n.3 (1st Cir. 2008). The First Circuit has further held that "a state-court adjudication of an issue framed in terms of state law may receive section 2254(d)(1) deference so long as the state standard is at least as protective of the defendant's rights as its federal counterpart." *Leftwich v. Maloney*, 532 F.3d 20, 23-24 (1st Cir. 2008).

Accordingly, the SJC's conclusion as to the effect of the closing argument was not unreasonable, and is not contrary to, or an unreasonable application of, clearly established Supreme Court law.

### E. Ground 6: Denial of Requested Jury Instruction

Ground 6 alleges that the trial judge improperly refused to instruct the jury in the manner he requested concerning his third-party culprit evidence. The SJC's analysis of this claim was very brief, noting only that Massachusetts case law does not require that judges give instructions

on third-party culprit evidence, as long as the judge explains that "the Commonwealth's burden includes the obligation to prove beyond a reasonable doubt that the defendant committed the crime." *Scesny*, 472 Mass. at 206 (quoting *Commonwealth v. Hoose*, 467 Mass. 395, 412 (2014)) (internal quotation marks omitted). The court then concluded that the third-party culprit instruction that the judge actually gave was sufficient to meet that burden. *Id.*[2]

"[J]ury instructions are inherently a question of state law." *Watkins v. Murphy*, 292 F.3d 70, 74 (1st Cir. 2002). Furthermore, "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, "[a]s a general rule, improper jury instructions will not form the basis for federal habeas corpus relief." *Niziolek v. Ashe*, 694 F.2d 282, 290 (1st Cir. 1982). In order to rise to the level of a constitutional violation, petitioner would have to show that the error "so infected the entire trial that the resulting conviction violates due process, not merely [that] the instruction is undesirable, erroneous, or even universally condemned." *Niland v. Hall*, 280 F.3d 6, 10 (1st Cir. 2002) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

Petitioner has made no showing that there was any error at all in the jury instruction, much less an error that "so infected the entire trial that the resulting conviction violates due process." Indeed, the instruction is plainly adequate under Massachusetts law.

Furthermore, and in any event, even if there were a basis for habeas review, there is no

---

[2] The actual instruction was:

> Now, third-party culprit. The defendant is presumed to be innocent until and unless you the jury decide unanimously that the Commonwealth has proved the defendant guilty of each and every element of the offense charged in the indictment beyond a reasonable doubt. The Commonwealth does not have the burden of proving that no one else may have committed the murder, nor does the defendant have to prove that another person committed the offense charged. The Commonwealth does have the burden to prove the defendant's guilt by proof beyond a reasonable doubt.

S.A. 1337-38; *Scesny*, 472 Mass. at 206.

clearly established Supreme Court law requiring the instruction petitioner requested. Petitioner points to *Mathews v. United States*, 485 U.S. 58 (1988), as support for the proposition that "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Id.* at 63; *see also United States v. Victoria-Peguero*, 920 F.2d 77, 86 (1st Cir. 1990). But petitioner did receive an instruction on his defense, which communicated essentially the same thing as his requested instruction. There is no Supreme Court precedent requiring any particular level of detail required in the instruction, or any guidance that would draw a constitutional line between the instruction he wanted and the instruction he got. The instruction given by the trial judge thus did not violate due process, much less clearly established law.

## IV.     Conclusion

For the foregoing reasons, the petition for habeas corpus is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
Dated: May 3, 2018                                                   United States District Judge